JOHNSON FISTEL, LLP
Frank J. Johnson (SBN 174882)
frankj@johnsonfistel.com
Brett M. Middleton (SBN 199427)
brettm@johnsonfistel.com
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOMO WANG, on behalf of himself and a class of similarly situated investors, | Case No.: 3:20-cv-4596 |
| Plaintiff, | |
| v. | |
| UNITED STATES OIL FUND, LP, UNITED STATES COMMODITY FUNDS LLC, JOHN P. LOVE, STUART P. CRUMBAUGH, NICHOLAS D. GERBER, ANDREW F NGIM, ROBERT L. NGUYEN, PETER M. ROBINSON, GORDON L. ELLIS, MALCOLM R. FOBES III, ABN AMRO, BNP PARIBAS SECURITIES CORP., CITADEL SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES USA LLC, DEUTSCHE BANK SECURITIES INC., GOLDMAN SACHS & COMPANY, JP MORGAN SECURITIES INC., MERRILL LYNCH PROFESSIONAL CLEARING CORP., MORGAN STANLEY & COMPANY INC., NOMURA SECURITIES INTERNATIONAL INC., RBC CAPITAL MARKETS LLC, SG AMERICAS SECURITIES LLC, UBS SECURITIES LLC, and VIRTU FINANCIAL BD LLC, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933** **JURY TRIAL DEMANDED** |
| Defendants. | |

CLASS ACTION COMPLAINT

1    Plaintiff, for his complaint, alleges the following upon personal knowledge as to himself
2    and his own acts and as to other matters, upon information and belief, based upon the investigation
3    made by his attorneys, which included, *e.g.*, a review of Securities and Exchange Commission
4    ("SEC") filings, news reports, and other publicly-available materials.

5    **INTRODUCTION AND OVERVIEW**

6    1.    This is a securities class action on behalf of all persons who purchased United
7    States Oil Fund, LP ("USO" or the "Fund") shares pursuant to or otherwise traceable to the Fund's
8    March 19, 2020 registration statement, as amended (together with the prospectus, "Registration
9    Statement"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

10   2.    USO is an exchange traded fund ("ETF") purportedly designed to track the daily
11   changes in percentage terms of the spot price of West Texas Intermediate ("WTI") light, sweet
12   crude oil delivered to Cushing, Oklahoma.  Because retail investors are generally not equipped to
13   buy and sell barrels of oil or authorized to trade oil futures, ETFs such as USO provide one of the
14   primary means that such investors can gain exposure to fluctuations in oil prices.

15   3.    USO stated that it would achieve its investment objective by investing
16   substantially all of its portfolio assets in the near month WTI futures contract.   However,
17   unbeknownst to investors, extraordinary market conditions in early 2020 made USO's purported
18   investment objective and strategy unfeasible.   Oil demand fell precipitously as governments
19   imposed lockdowns and businesses halted operations in response to the coronavirus pandemic.
20   In addition, in early March 2020, Saudi Arabia and Russia launched an oil price war, increasing
21   production and slashing export prices in a bid to increase the global market share of their domestic
22   petrochemical enterprises.   As excess oil supply increased and oil prices waned, the facilities
23   available for storage in Cushing, Oklahoma approached capacity, ultimately causing a rare market
24   dynamic known as "super contango" in which the futures prices for oil substantially exceeded the
25   spot price.  At the same time, retail investors began pouring hundreds of millions of dollars into
26   USO in an attempt to "buy the dip," believing (correctly) that the price of oil would rebound as
27   economies exited lockdown periods and the Russia/Saudi oil price war ended.  Because of the

28

1

**CLASS ACTION COMPLAINT**

nature of USO's investment strategy, these converging factors caused the Fund to suffer exceptional losses and undermined the Fund's ability to meet its ostensible investment objective.

4.      Defendants, as the creators, issuers, operators, and/or underwriters of the largest oil-related ETF in existence and active market-making players in the complex commodities and futures markets that determined the Fund's performance, should have known about the negative consequences to the Fund as a result of these converging adverse events.  However, rather than disclose the known impacts and risks to the Fund as a result of these exceptional threats, Defendants instead conducted a massive offering of USO shares, ultimately selling billions of dollars' worth of USO shares to the market.  The offering exacerbated the undisclosed risks to the Fund by magnifying trading inefficiencies and causing USO to approach position and accountability limits as a result of the Fund's massive positions in the WTI futures market.

5.      In the days that followed, USO quickly deteriorated.  Ultimately, the Fund suffered billions of dollars in losses and was forced to abandon its investment strategy.  Through a series of rapid-fire investment overhauls, USO transformed from the passive ETF designed to track spot oil prices that Defendants had pitched to investors to an almost unrecognizable actively managed fund struggling to avoid a total implosion.  In April and May 2020, USO belatedly acknowledged the extreme threats and adverse impacts that the Fund had been experiencing at the time of the March offering, but which defendants had failed to disclose to investors.

6.      As a result of Defendants' material misrepresentations in and omissions from the Registration Statement, Plaintiff and members of the Class suffered billions of dollars in losses.

**JURISDICTION AND VENUE**

7.      The claims asserted herein arise under and pursuant to §§ 11 and 15 of the 1933 Act [15 U.S.C. §§ 77k and 77o].  In connection with the acts complained of, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

1    8.    This Court has jurisdiction over the subject matter of this action pursuant to

2  28 U.S.C. § 1331 and § 22 of the 1933 Act [15 U.S.C. § 77v].

3    9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because some

4  defendants reside in this district and many of the acts charged herein, including the dissemination

5  of materially false and misleading information, occurred in substantial part in this district.

6                                        **THE PARTIES**

7    10.    Plaintiff Momo Wang purchased USO shares pursuant to or otherwise traceable

8  to the Registration Statement as set forth in the attached certification and was damaged thereby.

9    11.    Defendant United States Oil Fund, LP is a commodity pool operator that provides

10  investment exposure to oil markets.  The Fund's shares trade on the NYSE under the symbol

11  "USO."  The Fund is located in Walnut Creek, California.

12    12.    Defendant United States Commodity Funds LLC (the "Sponsor" or "USCF") is

13  the sponsor and general and managing partner of the Fund.  The Sponsor is located in Walnut

14  Creek, California.

15    13.    Defendant John P. Love was, at all relevant times, President, Chief Executive

16  Officer, Chairman of the Board, and a Management Director of the Sponsor.  Love signed the

17  Registration Statement.

18    14.    Defendant Stuart P. Crumbaugh was, at all relevant times, the Chief Financial

19  Officer, Secretary, and Treasurer of the Sponsor.  Crumbaugh signed the Registration Statement.

20    15.    Defendant Nicholas D. Gerber was, at all relevant times, a Vice President and a

21  Management Director of the Sponsor.  Gerber signed the Registration Statement.

22    16.    Defendant Andrew F Ngim was, at all relevant times, Chief Operating Officer

23  and a Management Director of the Sponsor.  Ngim signed the Registration Statement.

24    17.    Defendant Robert L. Nguyen was, at all relevant times, a Management Director

25  of the Sponsor.  Nguyen signed the Registration Statement.

26    18.    Defendant Peter M. Robinson was, at all relevant times, an Independent Director

27  of the Sponsor.  Robinson signed the Registration Statement.

28

3

CLASS ACTION COMPLAINT

19.     Defendant Gordon L. Ellis was, at all relevant times, an Independent Director of the Sponsor.  Ellis signed the Registration Statement.

20.     Defendant Malcolm R. Fobes III was, at all relevant times, an Independent Director of the Sponsor.  Fobes signed the Registration Statement.

21.     Defendants Love, Crumbaugh, Gerber, Ngim, Nguyen, Robinson, Ellis, and Fobes are collectively the "Individual Defendants."

22.     The following defendants served as underwriters for the offering and sale of USO shares pursuant to or traceable to the Registration Statement (1) ABN Amro, (2) BNP Paribas Securities Corp., (3) Citadel Securities LLC, (4) Citigroup Global Markets Inc., (5) Credit Suisse Securities USA LLC, (6) Deutsche Bank Securities Inc., (7) Goldman Sachs & Company, (8) JP Morgan Securities Inc., (9) Merrill Lynch Professional Clearing Corp., (10) Morgan Stanley & Company Inc., (11) Nomura Securities International Inc., (12) RBC Capital Markets LLC, (13) SG Americas Securities LLC, (14) UBS Securities LLC, and (15) Virtu Financial BD LLC (collectively, the "Underwriter Defendants").

23.     Each of the Underwriter Defendants executed an Authorized Participant Agreement with the Fund and the Sponsor for the sale of USO shares to the public.  These agreements provided the Underwriter Defendants with exclusive authorization to purchase and redeem shares of USO in blocks of 100,000 shares, dubbed "Creation Baskets" and "Redemption Baskets."  The Underwriter Defendants continuously purchased Creation Baskets and redeemed Redemption Baskets.  The Underwriter Defendants purchased Creation Baskets at USO's end-of-day (4:00 p.m. New York time) net asset value ("NAV") price—*i.e.*, the Fund's total assets minus its total liabilities, divided by the total shares outstanding.  The Underwriter Defendants then sold the shares from these Creation Baskets to the investing public at a per-share market price.  Creation Baskets were offered only pursuant to the most recent registration statement of the Fund, as declared effective by the SEC.

24.     The Underwriter Defendants received profits from the spread between the NAV at which they received Fund shares from USO and the market price at which the shares were sold

CLASS ACTION COMPLAINT

to the investing public.  For example, if USO shares were trading at a premium to NAV, the Underwriter Defendants would purchase Creation Baskets at the lower NAV and sell shares from these Creation Baskets to investors at the higher market price.  Conversely, if USO shares were trading at a discount to NAV, the Underwriter Defendants would purchase shares in the secondary market, at the lower market price, and redeem Redemption Baskets derived from those shares at the higher NAV.  This mechanism was designed to ensure that the market price of USO shares hewed closely to the Fund's NAV per share.

25.    By purchasing Creation Baskets from the Fund (*i.e.*, the issuer), breaking such Creation Baskets down into constituent shares, and selling those shares to investors, the Underwriter Defendants acted as statutory underwriters within the meaning of the 1933 Act. *See* 15 U.S.C. § 77b(a)(11).  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

**Background to the Fund**

26.    USO is a commodity pool and ETF designed to allow investors to gain exposure to fluctuations in the price of oil.  Because most retail investors are not equipped to buy and sell barrels of oil or authorized to trade oil futures contracts, they utilize ETFs such as USO to make investments based on the price of oil and to gain investment exposure to fluctuations in spot oil prices.

27.    The Fund's investment objective is for the daily changes in percentage terms of its per share NAV to reflect the daily changes in percentage terms of the spot price of WTI light, sweet crude oil delivered to Cushing, Oklahoma.  The Fund measures changes in the spot price of oil by reference to the daily changes in the price of specified short-term oil futures contracts—called the "Benchmark Oil Futures Contract"—plus interest earned on USO's collateral holdings, less USO's expenses.

28.    The Fund's Benchmark Oil Futures Contract refers to the futures contract on light, sweet crude oil as traded on the New York Mercantile Exchange (the "NYMEX") that is the near

month contract to expire, except when the near month contract is within two weeks of expiration, in which case it refers to the futures contract that is the next month contract to expire. The Fund's investment objective is to achieve a daily percentage change in its NAV over any 30- day period within plus or minus 10% of the daily percentage change in the price of the Benchmark Oil Futures Contract over the same period. In order to achieve its investment objective, USO has historically invested substantially all of its assets in current or front-month WTI futures contracts in order to closely track the Benchmark Oil Futures Contract.

29.   A futures contract is a legal agreement to buy or sell a particular commodity at a predetermined price at a specified time in the future. The buyer of a futures contract takes on the obligation to buy and receive the underlying asset when the futures contract expires, while the seller of a futures contract takes on the obligation to deliver the underlying asset at expiration. Futures contracts can be used to hedge other investments, to protect against fluctuations in the price of a commodity, or as a speculative investment.

30.   Many investors, including USO, trade futures contracts without any expectation of ever taking or delivering the underlying asset. Instead, these investors close out their positions prior to contract expiry. In the case of USO, the Fund rolled over its futures contract positions every month by selling its current WTI futures contracts holdings and then using the proceeds to buy the next month's WTI futures contracts. When the near month WTI futures contract was within two weeks of expiry, USO transitioned its positions to the next month futures contracts over a four-day period, a sequence it repeated every month.

31.   The Fund's efforts to roll its portfolio over every month to the next month futures contract subjected the Fund to market forces known as "backwardation" and "contango." In the event of a crude oil futures market where near month contracts trade at a higher price than next month to expire contracts, a situation described as "backwardation," then the value of the contract would tend to rise as it approaches expiration. Conversely, in the event of a crude oil futures market where near month contracts trade at a lower price than next month contracts, a situation

CLASS ACTION COMPLAINT

1    described as "contango," then the value of the benchmark contract would tend to decline as it
2    approaches expiration.

3        32.    The Fund publishes its NAV per share daily on its website,
4    http://www.uscfinvestments.com/uso.  As an ETF, the market price for USO shares can reflect
5    either a premium or a discount to the Fund's NAV.  However, because the Underwriter
6    Defendants, known as "Authorized Participants," can buy new shares or redeem outstanding
7    shares from the Fund for resale to public investors, arbitrage opportunities generally cause daily
8    changes in USO's share price on the NYSE to closely track daily changes in USO's NAV.

9                         **EVENTS LEADING UP TO OFFERING**

10       33.    Demand for oil suffered a precipitous decline in early 2020 due to the global
11   coronavirus pandemic.  National, state, and local governments imposed mandatory lockdowns to
12   mitigate the spread of the disease.  Businesses closed and consumer spending plummeted.

13       34.    Adding to pricing pressures, on March 8, 2020, the Kingdom of Saudi Arabia
14   unexpectedly announced price discounts for its oil exports of $6 to $8 per barrel to its customers
15   in Europe, Asia, and the United States.  The next day, the price of WTI fell 25%, its biggest single-
16   day decline in decades.  In the days that followed, Saudi Arabia and Russia announced significant
17   increases in oil production, further depressing crude oil prices.  By March 18, 2020, WTI fell
18   below $21 per barrel, an 18-year low and less than half the price of just two weeks previously.

19       35.    Around this same time, retail investors began pouring hundreds of millions of
20   dollars into USO in order to "buy the dip" in oil prices, expecting (correctly) that the price of oil
21   would rise as the market effects of the coronavirus pandemic and the Russia/Saudi oil price war
22   waned.  However, unbeknownst to investors the recent market volatility and massive influx of
23   investor capital had created adverse trends and extreme risks set to implode USO's value and
24   which threatened the Fund's very existence.  As the Fund ballooned in size, issuing over
25   ***$2.4 billion*** worth of new shares in the month of March alone, USO also encountered position
26   limits that impaired its ability to achieve its investment objective and liquidity constraints that
27   amplified Fund losses.

28

                                     7
                        CLASS ACTION COMPLAINT

36.     In addition, the WTI near future contracts that formed almost the entirety of USO's portfolio entered a period of "super contango," a rare event that occurs when the spot price trades substantially below the futures price.  This dynamic was exacerbated because the inventory space available to store WTI barrels in Cushing, Oklahoma was quickly filling up due to excess supply, significantly increasing the costs to store delivered oil barrels.  By March 23, 2020, the contango between near month and next month WTI futures contracts reached $2.12, an increase of ***more than 1,500%*** as compared to the contango that existed at the beginning of March.  As the near month WTI futures contracts held by USO approached expiry and converged on the spot price, the Fund suffered devastating losses and was set to suffer even greater losses when it rolled forward into significantly more expensive next month contracts in mid-April 2020.

37.     Defendants, as the creators, issuers, operators, and/or underwriters of the largest oil-related ETF in existence and active market-making players in the complex commodities and futures markets that determined the Fund's performance, should have been aware of the negative consequences to the Fund as a result of these converging adverse events.  However, rather than disclose the known impacts and risks to the Fund as a result of these exceptional threats, Defendants decided to conduct a massive offering of USO shares to public investors (the "Offering").  Despite the fact that the risk profile for the Fund had profoundly changed, solicitation materials for the Offering substantially mirrored the Fund's prior disclosures.  Indeed, unbeknownst to investors, the Offering itself materially increased the risks to the Fund because it heightened liquidity constraints in the WTI futures market and pushed the Fund towards position limits as the Sponsor piled hundreds of millions of dollars from Offering proceeds into the Fund's purported investment strategy.

38.     On March 19, 2020, USO filed with the SEC a registration statement on Form S-3 to register USO shares for the Offering, which, after amendment, was declared effective March 23, 2020.  The Individual Defendants signed the Registration Statement on behalf of themselves, USO, and the Sponsor.  Defendants would ultimately sell all of the shares registered under the Registration Statement.

8

CLASS ACTION COMPLAINT

1      39.    The Offering allowed Defendants to raise hundreds of millions of dollars from outside investors.  In March 2020, the Fund sold over $2.4 billion worth of USO shares to investors.  Similarly, in April 2020, the Fund sold about $3.9 billion worth of USO shares.  This compares to only $3.2 billion worth of USO shares sold during the entirety of 2019.

40.    Soon after the Offering launched, the Fund began to suffer extraordinary losses and operational malfunctions.  By March 31, 2020, the contango between near and next month WTI futures contracts increased to over $4, nearly doubling in just one week.  Two weeks later, the contango between near and next month WTI futures contracts increased to over $7.

41.    On April 16, 2020, USO announced a significant change to its investment strategy.  Citing "market conditions and regulatory requirements," USO stated that it would now only invest 80% of its portfolio in current month WTI futures contracts (as opposed to the previous 100% allocation) and the remaining 20% in second month WTI futures contracts.  As a result, USO stated that it "may not be able to meet its investment objective."

42.    On April 20, 2020—the day before the May 2020 WTI contracts expired—the May 2020 WTI contracts closed at a negative price as investors became concerned that the cost to store the barrels of oil being delivered to Cushing, Oklahoma would be more than the oil was worth.

43.    That same day, USO announced that it was running out of registered shares that it could sell to the market.  As a result, the Fund stated that it may be forced to suspend its creation of new shares, which could increase the spread between bid and ask prices offered by brokers and cause the market price of USO shares to significantly diverge from its NAV per share.

44.    Also on April 20, 2020, USO filed with the SEC a registration statement on Form S-3 for the sale of additional USO shares to the market (the "April Registration Statement").  The SEC, however, refused to declare the registration effective out of concern for the impact to investors, preventing Defendants from flooding the market with even more USO shares.

45.    The April Registration Statement made numerous revelations about how recent market dynamics had adversely impacted the Fund.  For example, the April Registration

9

CLASS ACTION COMPLAINT

1  Statement contained an entirely new section regarding "COVID-19 Risk" and the severe impacts

2  of the pandemic on the Fund's performance, which had been conspicuously absent from the

3  Registration Statement.  It stated in pertinent part:

4  > ***COVID-19 Risk.***

5  > An outbreak of infectious respiratory illness caused by a novel coronavirus
6  > known as COVID-19 was first detected in China in December 2019 and has now
   > been detected globally.  In March 2020, the World Health Organization declared
7  > the COVID-19 outbreak a pandemic.   COVID-19 has resulted in numerous
   > deaths, travel restrictions, closed international borders, enhanced health
8  > screenings at ports of entry and elsewhere, disruption of and delays in healthcare
   > service preparation and delivery, prolonged quarantines and the imposition of
9  > both local and more widespread "work from home" measures, cancellations,
   > supply chain disruptions, and lower consumer demand, as well as general
   > concern and uncertainty.  ***The ongoing spread of COVID-19 has had, and is***
10 > ***expected to continue to have, a material adverse impact on local economies in***
   > ***the affected jurisdictions and also on the global economy, as cross border***
11 > ***commercial activity and market sentiment are increasingly impacted by the***
   > ***outbreak and government and other measures seeking to contain its spread.***
12 > ***The impact of COVID-19, and other infectious illness outbreaks that may arise***
   > ***in the future, could adversely affect individual issuers and capital markets in***
13 > ***ways that cannot necessarily be foreseen.  In addition, actions taken by***
   > ***government and quasi-governmental authorities and regulators throughout***
14 > ***the world in response to the COVID-19 outbreak, including significant fiscal***
   > ***and monetary policy changes, may affect the value, volatility, pricing and***
15 > ***liquidity of some investments or other assets, including those held by or***
   > ***invested in by USO.  Public health crises caused by the COVID-19 outbreak***
16 > ***may exacerbate other pre-existing political, social and economic risks in***
   > ***certain countries or globally.  The duration of the COVID-19 outbreak and its***
17 > ***ultimate impact on USO and, [sic] on the global economy, cannot be***
   > ***determined with certainty.  The COVID-19 pandemic and its effects may last***
18 > ***for an extended period of time, and could result in significant and continued***
   > ***market volatility, exchange trading suspensions and closures, declines in***
19 > ***global financial markets, higher default rates, and a substantial economic***
   > ***downturn or recession.   The foregoing could impair the USO's ability to***
20 > ***maintain operational standards (such as with respect to satisfying redemption***
   > ***requests), disrupt the operations of USO's service providers, adversely affect***
21 > ***the value and liquidity of USO's investments, and negatively impact the USO's***
   > ***performance and your investment in USO.  The extent to which COVID-19 will***
22 > ***affect USO and USO's service providers and portfolio investments will depend***
   > ***on future developments, which are highly uncertain and cannot be predicted,***
23 > ***including new information that may emerge concerning the severity of***
   > ***COVID-19 and the actions taken to contain COVID-19.  Given the significant***
24 > ***economic and financial market disruptions associated with the COVID-19***
   > ***pandemic, the valuation and performance of the USO's investments could be***
25 > ***impacted adversely.***

26 (All emphasis is added unless otherwise noted).

27

28

CLASS ACTION COMPLAINT

46.     The April Registration Statement also revealed that the Fund had suffered the "[w]orst [m]onthly [d]rawdown" in its history in March 2020, losing 55% in a single month.  It acknowledged that the Fund would be unable to achieve *any* significant interest income for all of 2020 due to losses suffered since the start of the year.  It stated that, "[g]iven market volatility in 2020 arising from the COVID-19 pandemic and other geopolitical issues, USO believes it is reasonable to assume that *it will not earn any significant interest income in 2020*."

47.     On April 21, 2020, USO announced that it had been unable to invest according to the new investment strategy announced on April 16, 2020.  Instead, the Fund had invested 40% of its portfolio in the first month WTI futures contract, 55% in the second month WTI futures contract, and 5% in the third month WTI futures contract.

48.     Also on April 21, 2020, USO announced that the April Registration Statement had not been declared effective by the SEC and that, as a result, the Fund had issued all of its remaining registered shares.

49.     On April 22, 2020, USO announced that the Fund would undergo a 1-for-8 reverse split of shares after market close on April 28, 2020.

50.     That same day, USO announced that it had once again changed its investment strategy as a result of "extraordinary market conditions in the crude oil markets, including 'super contango.'"  As a result, it stated that it would be investing only approximately 20% of its portfolio in the first month WTI futures contract, while investing 50% in the second month WTI futures contract, 20% in third month WTI futures contract, and 10% in the fourth month WTI futures contract.

51.     Two days later, on April 24, 2020, USO stated that it was yet again altering its investment strategy.  While it would still be investing approximately 20% of its portfolio in the first month WTI futures contract, USO claimed it would now invest 40% in the second month WTI futures contract, 20% in third month WTI futures contract, and 20% in the fourth month WTI futures contract.

52.     Three days after that, on April 27, 2020, USO stated that it was once again revising its investment strategy.  As a result, it would invest approximately 30% in the second month WTI futures contract, 15% in the third month WTI futures contract, 15% in the fourth month WTI futures contract, 15% in the fifth month WTI futures contract, 15% in the sixth month WTI futures contract, and 10% in the June 2021 WTI futures contract.

53.     As a result of these sudden and dramatic changes, the Fund's investment strategy was fundamentally different from the strategy represented to investors in the Registration Statement.  Indeed, as had become apparent, the passive strategy of investing Fund assets in current month WTI futures contracts was not feasible because of the undisclosed adverse trends that the Fund was then experiencing, as detailed herein.

54.     On April 27, 2020, USO filed with the SEC an amendment to the April Registration Statement on Form S-3/A, which included additional disclosures regarding the convergence of adverse factors impacting the Fund and its performance (the "April Amendment").  For example, the April Amendment stated that the Fund was suffering from the impacts of "super contango."  It also revealed that the Fund's performance and ability to execute its strategy had been impacted not only by COVID-19, but also the Russia/Saudi oil price war, the sale of an enormous amount of USO shares in a short period of time (an effect compounded by the Offering), and regulatory and marketplace limits placed on the Fund.  It stated in pertinent part:

> In 2020, in the context of the COVID-19 pandemic and disputes among oil producing countries regarding potential limits on the production of crude oil, significant market volatility occurred and is continuing in the crude oil markets as well as the oil futures markets. ***As a result of market and regulatory conditions, including significant market volatility, large numbers of USO shares purchased during a short period of time, regulatory accountability levels and position limits on oil futures contracts that were imposed on USO, USO announced its intent to invest in Oil Futures Contracts other than the Benchmark Oil Futures Contract and that it could, if it determined it appropriate in light of market conditions and regulatory requirements, invest in Other Oil-Related Interests.  Investments intended to meet USO's investment objective, other than investments in the Benchmark Futures Contract, may impact the performance of USO and can make it difficult for USO to track the Benchmark Futures Contract or meet its investment objective.***

CLASS ACTION COMPLAINT

*Certain circumstances, including the need to comply with regulatory requirements (including, but not limited to, exchange accountability and position limits) and market conditions (including but not limited to those allowing USO to obtain greater liquidity or to execute transactions with more favorable pricing) as well as risk mitigation measures imposed . . . by USO's futures commission merchant that further limit USO and other market participants from investing in crude oil futures contracts in certain months, could and have caused USO to invest in Oil Futures Contracts other than the Benchmark Oil Futures Contract. Currently, in the context of the COVID-19 pandemic and disputes among oil producing countries regarding potential limits on the production of crude oil, significant market volatility occurred in the oil futures markets. In addition, the exchange where the Benchmark Oil Futures Contract is traded became concerned about positions that USO had acquired in that contract and imposed limits on USO's holding of that contract, as well as subsequent months of that contract.*

55.   The April Amendment also acknowledged that the Fund risked substantially diverging from its benchmark and failing to meeting its investment objective because of market conditions and its inability to sufficiently invest in the Benchmark Futures Contracts. It continued in pertinent part:

In 2020, in the context of the COVID-19 pandemic and disputes among oil producing countries regarding potential limits on the production of crude oil, significant market volatility occurred and is continuing in the crude oil markets as well as the oil futures markets. *As a result of market and regulatory conditions, including significant market volatility, large numbers of USO shares purchased during a short period of time, and applicable regulatory accountability levels and position limits on oil futures contracts that were imposed on USO, USO invested in Oil Futures Contracts in months other than the Benchmark Oil Futures Contracts. The foregoing impacted the performance of USO and made it difficult for USO to track the Benchmark Futures Contract or meet its investment objective, which is for the daily percentage changes in the NAV per share to reflect the daily percentage changes of the spot price of light, sweet crude oil, as measured by the daily percentage changes in the price of Benchmark Oil Futures Contract, plus interest earned on USO's collateral holdings, less USO's expenses.*

*USO intends to attempt to continue tracking the Benchmark Futures Contract as closely as possible, however, in the current market and regulatory environment, significant tracking deviations can be anticipated to occur above and beyond the differences that historically occurred when the primary investment was the Benchmark Futures Contract and light sweet crude oil futures contracts of the same month traded on ICE Futures. In addition, the types of permitted investments that USO invests in as a result of regulatory requirements and limits imposed by its futures commission merchants in trying to approximate its investment objective such as later months in the Oil Futures Contracts than the tenor of the Benchmark Futures Contract are likely, and will likely continue, to experience greater effects from contango. While it is USO's expectation that at some point in the future it will return to investing in the Benchmark Futures Contract and related ICE Futures contracts or other similar futures contracts of the same tenor based on light, sweet crude oil, there*

13

*can be no guarantee of when, if ever, that will occur.  As a result, investors in USO should expect that there will be continued deviations between the performance of USO's investments and the Benchmark Futures Contract and that USO may not be able to track the Benchmark Futures Contract or meet its investment objective.*

56.    On April 28, 2020, USO filed with the SEC the Fund's monthly account statement for March 2020 on Form 8-K.  The statement revealed that USO had suffered nearly ***$1.2 billion*** in total losses for the month.   However, because the Fund also issued over $2.4 billion worth of new USO shares, the Fund's total NAV actually increased during the month.  April 28, 2020 was also the last day before the Fund's reverse split.  That day, the price of USO closed at $2.13 per share, down ***over 60%*** since March 19, 2020, despite the injection of billions of dollars in outside investor capital into the Fund as a result of new share issuances.

57.    On April 30, 2020, USO filed a notice with the SEC on Form 8-K disclosing that the Fund was once again changing its investment strategy and would likely continue to make such changes going forward.  Because of the frequent and dramatic changes to its investment strategy, the Fund stated that it would provide future updates on its investments on the Fund's website pursuant to a complex waterfall formula, effectively giving the Sponsor carte blanche to invest in any oil-related investments that it saw fit and destroying any pretense that the Fund was following the investment objective represented to investors in the Registration Statement.  In a span of only a few weeks, the USO had radically changed from a passive investment vehicle used to track the spot price of oil through current WTI futures contracts to what was effectively an actively managed fund frantically struggling to avoid a total implosion through a hodgepodge of oil-related investments.  In addition, the notice stated that USO had suffered "significant deviations" from its claimed investment objective as a result of its inability to invest in the near month WTI futures market.

58.    On May 6, 2020, USO filed with the SEC another amendment on Form S-3/A to the April Registration Statement (the "May Amendment").  The May Amendment made clear that the extraordinary market conditions that had destroyed the ability of the Fund to follow its investment objective and caused investors to suffer billions of dollars in losses had materially

CLASS ACTION COMPLAINT

impacted the Fund by March 2020—*i.e.*, **before** the Offering—despite the fact that these specific

impacts and threats to the Fund's performance were omitted from the Registration Statement.

The robust and specific risk disclosures provided in the May Amendment stood in stark contrast

to the lack of such disclosures in the Registration Statement, notwithstanding the fact that these

disclosures were required to be made in the Registration Statement in order to make the statements

provided therein not misleading and to comply with SEC regulations.   For example, the May

Amendment stated in pertinent part:

> As a result of previously discussed market conditions and the regulatory response that occurred **in March** and April of 2020, large numbers of USO shares that were purchased during a short period of time, and regulatory accountability levels and position limits on oil futures contracts that were imposed on USO, USO invested in Oil Futures Contracts in months other than the Benchmark Oil Futures Contracts.  The foregoing impacted the performance of USO and made it difficult for USO to meet its investment objective, which is for the daily percentage changes in the NAV per share to reflect the daily percentage changes of the spot price of light, sweet crude oil, as measured by the daily percentage changes in the price of Benchmark Oil Futures Contract, plus interest earned on USO's collateral holdings, less USO's expenses.

> *          *          *

> **In March 2020**, contango dramatically increased and reached historic levels during the economic crisis arising from the COVID-19 pandemic and disputes among oil producing nations regarding limits on oil production levels[.]  This contango was due to significant market volatility that has occurred and is continuing in the crude oil markets as well as the oil futures markets.  Crude oil prices have collapsed in the wake of the COVID-19 demand shock, which reduced global petroleum consumption, and the price war launched by Saudi Arabia **at the beginning of March 2020** in response to Russia's unwillingness to participate in extending previously agreed upon supply cuts.  An estimated twenty million barrels a day of crude demand evaporated as a result of quarantines and massive drops in industrial and manufacturing activity.   In addition, the United States, OPEC, Russia, and other oil producers around the world agreed to a historic 9.7 million barrel per day cut to crude supply.  In the short term, this cut does not close the gap relative to the massive drop in demand.  However, the duration of the agreement, lasting until 2022, should allow oil prices to slowly recover as demand re-materializes.  The supply cut should also reduce at least some of the unprecedented volatility oil markets **experienced in March**.  As the crisis continues into the second quarter of 2020, and potentially beyond, demand weakness and limited storage capacity will continue to put pressure on crude oil in the near term.

59.     On May 27, 2020, USO filed the Fund's monthly account statement for

April 2020 on Form 8-K with the SEC.  The statement revealed that USO had suffered over

$2.6 billion in total losses for the month, which included more than $3.6 billion in realized trading losses on futures contracts (partially offset by unrealized trading gains).

60.     On May 29, 2020, it was reported that the SEC and the Commodity Futures Trading Commission had both launched investigations into USO regarding the propriety of the Fund's disclosures to investors and the Fund's rapid-fire changes to its investment strategy.

61.     As a result of Defendants' wrongful acts and omissions, Plaintiff and the Class purchased USO securities pursuant to or otherwise traceable to the Registration Statement and were damaged thereby.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING REGISTRATION ACTION STATEMENT

62.     On March 19, 2020, Defendants filed with the SEC the Registration Statement on Form S-3.  Numerous representations to investors in the Registration Statement were materially false and misleading when made.  For example, despite the severity of the adverse market trends impacting the Fund, which caused it to suffer hundreds of millions of dollars in losses and threatened the Fund's very existence, the Registration Statement contained substantially the same generic boilerplate risk disclosures that the Fund had provided in past registration statements. This conveyed to the market that USO was not facing the extraordinary convergence of existential threats that the Fund was in fact facing at the time.  The Registration Statement did not even mention the Russia/Saudi price war, the effects of "super contango," the specific impacts of ongoing market volatility on Fund performance, or the fact that the Fund was approaching position limits and liquidity constraints because of the massive influx of investor capital into the Fund (an adverse trend accelerated by the Offering itself).

63.     The Registration Statement also failed to provide any specifics regarding the effects of the COVID-19 pandemic, instead merely listing "pandemics such as COVID-19" among a laundry list of general market "events or conditions" that "may adversely impact the demand for crude oil."  The Registration Statement stated in pertinent part:

> ***Economic conditions impacting crude oil.***  The demand for crude oil correlates closely with general economic growth rates.  The occurrence of recessions or

other periods of low or negative economic growth will typically have a direct adverse impact on crude oil prices. ***Other factors that affect general economic conditions in the world or in a major region, such as*** changes in population growth rates, periods of civil unrest, ***pandemics (e.g. COVID-19)[,]*** government austerity programs, or currency exchange rate fluctuations, ***can also impact the demand for crude oil***. Sovereign debt downgrades, defaults, inability to access debt markets due to credit or legal constraints, liquidity crises, the breakup or restructuring of fiscal, monetary, or political systems such as the European Union, ***and other events or conditions (e.g. pandemics such as COVID-19)***, that impair the functioning of financial markets and institutions ***also may adversely impact the demand for crude oil***.

64.     The statements in ¶ 63 were materially false and misleading when made. At the time of the Offering, the Fund had ***already*** been severely impacted by increased volatility in oil and oil-related markets and reduced oil demand as a result of the COVID-19 pandemic, which had compromised the Fund's ability to achieve its investment strategy and objective and caused the Fund to suffer hundreds of millions of dollars in losses. The bald mention of COVID-19 in the Registration Statement among a laundry list of general market conditions that "may" possibly cause future adverse impacts to the Fund omitted the adverse impacts, concrete harms, and existential threats posed by the pandemic that already existed at the time. Rather than timely provide this information in the Registration Statement as was required, these adverse facts were only belatedly revealed ***after*** the Offering had been completed, including in the COVID-19-related disclosures contained in the April Amendment and the May Amendment and similar belated disclosures by USO, as detailed in ¶¶ 41-59 above.

65.     The Registration Statement likewise discussed general factors that "may affect" oil supply and demand, but omitted the acute impacts that the Fund was already suffering as a result of the Russia/Saudi oil price war and the precipitous slowdown in demand as a result of the coronavirus pandemic. These discussions were essentially verbatim to representations contained in the Fund's prior registration statements, despite the materially different risks that the Fund was then experiencing at the time of the Offering. The Registration Statement stated in pertinent part:

> ***Other crude oil demand-related factors.*** Other factors that may affect the demand for crude oil and therefore its price, include technological improvements in energy efficiency; seasonal weather patterns, which affect the demand for crude oil associated with heating and cooling; increased competitiveness of alternative energy sources that have so far generally not been competitive with oil without the benefit of government subsidies or mandates; and changes in

technology or consumer preferences that alter fuel choices, such as toward alternative fueled vehicles.

***Other crude oil supply-related factors.*** Crude oil prices also vary depending on a number of factors affecting supply. For example, increased supply from the development of new oil supply sources and technologies to enhance recovery from existing sources tends to reduce crude oil prices to the extent such supply increases are not offset by commensurate growth in demand. Similarly, increases in industry refining or petrochemical manufacturing capacity may impact the supply of crude oil. World oil supply levels can also be affected by factors that reduce available supplies, such as adherence by member countries to the Organization of the Petroleum Exporting Countries ("OPEC") production quotas and the occurrence of wars, hostile actions, natural disasters, disruptions in competitors' operations, or unexpected unavailability of distribution channels that may disrupt supplies. Technological change can also alter the relative costs for companies in the petroleum industry to find, produce, and refine oil and to manufacture petrochemicals, which in turn may affect the supply of and demand for oil.

66.     Similarly, the Registration Statement contained boilerplate discussions of the potential impacts of contango, regulatory position limits and accountability levels, market volatility, illiquidity, and correlation risks that were substantially identical to the representations Defendants had made in connection with past offerings, despite the fact that the Fund was already suffering acute impacts from each of these so-called potential risks that "may" or "could" impact the Fund in the future. Indeed, rather than disclose the true facts, the Registration Statement claimed that the Fund's investments remained highly liquid, stating:

USO invests only in Oil Futures Contracts and Other Oil-Related Investments that, in the opinion of USCF, are traded in sufficient volume to permit the ready taking and liquidation of positions in these financial interests and in Other Oil-Related Investments that, in the opinion of USCF, may be readily liquidated with the original counterparty or through a third party assuming the position of USO.

67.     The statements in ¶¶ 65-66 were materially false and misleading when made. Specifically, while the Registration Statement acknowledged the materiality to the Fund of certain categories of potentially adverse events, it failed to disclose that severe examples of these general prospective categories were ***already*** then occurring, threatening the Fund's very existence, and undermining the Fund's ability to achieve its investment objective. Instead of disclosing known adverse impacts and the specific risks that the Fund was then facing, the Registration Statement offered only generic, boilerplate discussions of future potential adverse impacts to the Fund that

18

CLASS ACTION COMPLAINT

"may" or "could" occur if general categories of contingent circumstances later developed. Further, by failing to provide any meaningful discussion of concrete harms and imminent threats then facing the Fund and instead simply copying generic, boilerplate risk disclosures from past offerings, the Registration Statement represented to investors that the risk profile of the Fund had not materially changed since the time of these prior offerings. In fact, the Fund was facing multiple crises that had radically altered its risk profile and undermined its ability to achieve its investment objective (as defendants would later be forced to concede), including: (1) extraordinary market volatility caused by decreased demand for oil from the coronavirus pandemic and increased oil supply and diminished oil prices caused by the Russia/Saudi oil price war; (2) a massive influx of investor capital into the Fund, totaling hundreds of millions of dollars, in a matter of days, which increased Fund inefficiencies, heightened illiquidity in the WTI futures contract markets in which the Fund invested, and caused the Fund to approach positional and regulatory limits (adverse trends exacerbated by the Offering itself); and (3) a sharp divergence between spot and future prices in the WTI oil markets, leading to a super contango market dynamic as oil storage space in Cushing, Oklahoma dwindled and was insufficient to account for the excess supply expected to be delivered pursuant to the WTI May 2020 futures contract. These events synergistically converged during March and April 2020 to adversely impact USO, threatening the Fund in ways uniquely known and understood by Defendants because of their insider and market maker status.

68.    The Registration Statement also misstated "USO's Investment Objective and Strategy." The Registration Statement stated that the Fund's investment objective was "for the daily changes in percentage terms of its shares' per share [NAV] to reflect the daily changes in percentage terms of the spot price of light, sweet crude oil delivered to Cushing, Oklahoma, as measured by the daily changes in the price of [the Benchmark Oil Futures Contract], plus interest earned on USO's collateral holdings, less USO's expenses." It defined "[t]he Benchmark Oil Futures Contract" as "the futures contract on light, sweet crude oil as traded on the [NYMEX] that is the near month contract to expire, except when the near month contract is within two weeks

1    of expiration, in which case it will be measured by the futures contract that is the next month

2    contract to expire."

3          69.    Similarly, the Registration Statement represented that the Fund would achieve its

4    investment objective by investing in the near month WTI futures contract, stating that the design

5    of USO's Benchmark Oil Futures Contract is such that every month it begins by using the near

6    month contract to expire until the near month contract is within two weeks of expiration, when,

7    over a four day period, it transitions to the next month contract to expire as its benchmark contract

8    and keeps that contract as its benchmark until it becomes the near month contract and close to

9    expiration."  Likewise, the Registration Statement claimed that the "Benchmark Oil Futures

10   Contract is changed from the near month contract to the next month contract over a four-day

11   period."  It continued in pertinent part:

12   In addition, USCF believes that market arbitrage opportunities will cause daily
     changes in USO's share price on the NYSE Arca on a percentage basis to closely
13   track daily changes in USO's per share NAV on a percentage basis.   USCF
     further believes that daily changes in prices of the Benchmark Oil Futures
14   Contract have historically closely tracked the daily changes in spot prices of light,
     sweet crude oil.  USCF believes that **the net effect of these relationships will be**
15   **that the daily changes in the price of USO's shares on the NYSE Arca on a**
     **percentage basis will closely track, the daily changes in the spot price of a**
16   **barrel of light, sweet crude oil on a percentage basis, less USO's expenses**.

17         70.    Moreover, the Registration Statement stated, "USCF [*i.e.*, the Sponsor] believes

18   that market arbitrage opportunities will cause the daily changes in USO's share price on the NYSE

19   Arca to closely track the daily changes in USO's per share NAV" and "that the daily changes in

20   USO's NAV in percentage terms will closely track the daily changes in percentage terms in the

21   Benchmark Oil Futures Contract, less USO's expenses."  It continued in pertinent part:

22   **USCF employs a "neutral" investment strategy in order to track changes in the**
     **price of the Benchmark Oil Futures Contract regardless of whether the price**
23   **goes up or goes down.**  USO's "neutral" investment strategy is designed to permit
     investors generally to purchase and sell USO's shares for the purpose of investing
24   indirectly in crude oil in a cost-effective manner, and/or to permit participants in
     the oil or other industries to hedge the risk of losses in their crude oil-related
25   transactions.    Accordingly, depending on the investment objective of an
     individual investor, the risks generally associated with investing in crude oil
26   and/or the risks involved in hedging may exist.

27

28

71.     The Registration Statement also claimed that USO was "not actively managed" and instead simply "tracks the Benchmark Oil Futures Contract during periods in which the price of the Benchmark Oil Futures Contract is flat or declining as well as when the price is rising."  It continued in pertinent part:

> USO is not actively managed by conventional methods.  Accordingly, *if USO's investments in Oil Interests are declining in value, USO will not close out such positions except in connection with paying the proceeds to an Authorized Participant upon the redemption of a basket or closing out futures positions in connection with the monthly change in the Benchmark Oil Futures Contract.* USCF will seek to cause the NAV of USO's shares to track the Benchmark Oil Futures Contract during periods in which its price is flat or declining as well as when the price is rising.

72.     The statements in ¶¶ 69-71 were materially false and misleading when made. Specifically, USO could not pursue the claimed passive investment strategy or objective portrayed in the Registration Statement because the Fund was facing a host of interrelated crises that had undermined its ability to invest substantially all Fund assets in the near month WTI futures contract and thus track its benchmark, including: (1) extraordinary market volatility caused by decreased demand for oil from the coronavirus pandemic and increased oil supply and diminished oil prices caused by the Russia/Saudi oil price war; (2) a massive influx of investor capital into the Fund, totaling hundreds of millions of dollars, in a matter of days, which increased Fund inefficiencies, heightened illiquidity in the WTI futures contract markets in which the Fund invested, and caused the Fund to approach positional and regulatory limits (adverse trends exacerbated by the Offering itself); and (3) a sharp divergence between spot and future prices in the WTI oil markets, leading to a super contango market dynamic as oil storage space in Cushing, Oklahoma dwindled and was insufficient to account for the excess supply expected to be delivered pursuant to the WTI May 2020 futures contract.  As a result, the Fund could not continue to pursue the passive investment strategy represented in the Registration Statement, causing its results to significantly deviate from its purported benchmark, and the Fund was not an effective means for investors to track the daily percentage changes in the spot price of light, sweet crude oil delivered to Cushing, Oklahoma.

CLASS ACTION COMPLAINT

73.     Moreover, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii) ("Item 303"), required Defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."   Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105 ("Item 105"), required, in the "Risk Factors" section of the Registration Statement, "a discussion of the most significant factors that make an investment in the registrant or offering speculative or risky" and that each risk factor "adequately describe[] the risk."   The failure of the Registration Statement to disclose the concrete harms and acute risks to the Fund posed by the coronavirus pandemic, the Russia/Saudi oil price war, the massive influx of investor capital into the Fund, the fact that the Fund was approaching position and accountability limits, the effects of super contango, and insufficient WTI storage capacity violated Item 303 because these undisclosed risks were known and would (and did) have an unfavorable impact on USO's revenues and income from continuing operations.   This failure also violated Item 105 because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in USO securities speculative or risky.

### CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased USO shares pursuant to or otherwise traceable to the Registration Statement (the "Class").   Excluded from the Class are Defendants, the officers and directors of the defendant companies, at all relevant times, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, heirs, successors or assigns and any such excluded party.

75.     The members of the Class are so numerous that joinder of all members is impracticable.   While the exact number of Class members is unknown to Plaintiff at this time and

CLASS ACTION COMPLAINT

can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Defendants, or specifically by USO or its transfer agents, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

76.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' conduct in violation of federal law that is complained of herein.  Plaintiff does not have any interests antagonistic to, or in conflict with, the other members of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and has retained counsel competent and experienced in class and securities litigation.

77.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the 1933 Act was violated by Defendants' acts as alleged herein;

(b)    whether the Registration Statement negligently omitted and/or misrepresented material facts about the Fund;

(c)    whether the Registration Statement contained untrue statements of material fact; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

78.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

23

CLASS ACTION COMPLAINT

**COUNT I**

**For Violation of § 11 of the 1933 Act**
**Against All Defendants**

79.    Plaintiff repeats and realleges each and every allegation contained above.

80.    This Count is brought pursuant to § 11 of the 1933 Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

81.    This Count does not sound in fraud.  Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of a § 11 claim.

82.    The Registration Statement was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

83.    Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

84.    USO is the registrant for the Fund shares sold pursuant to or traceable to the Registration Statement.  As the issuer of the shares, USO is strictly liable to Plaintiff and the Class for the misstatements and omissions.

85.    Each of the Individual Defendants signed the Registration Statement and, for some Individual Defendants, were also named in the Registration Statement as being directors or persons performing similar functions.

86.    Each of the Underwriter Defendants qualifies as an "underwriter" under § 11 of the 1933 Act.

87.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

88.    By reason of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated, § 11 of the 1933 Act.

CLASS ACTION COMPLAINT

89.     Plaintiff purchased USO shares pursuant to or otherwise traceable to the Registration Statement.

90.     Plaintiff and the Class have sustained damages.  The value of USO shares has declined substantially subsequent to and due to Defendants' violations.

91.     At the time of their purchases of USO shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that this action was filed.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time that this action was filed.

## COUNT II

### For Violation of § 15 of the 1933 Act
### Against USO, the Sponsor, and the Individual Defendants

92.     Plaintiff repeats and realleges each and every allegation contained above.

93.     This Count is brought pursuant to § 15 of the 1933 Act against USO, the Sponsor, and the Individual Defendants.

94.     This Count does not sound in fraud.  Plaintiff does not allege that Defendants had scienter or fraudulent intent.

95.     The Individual Defendants were each control persons of USO by virtue of their positions as directors, senior officers, and/or principals of the USO or the Sponsor.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or principals of the USO and the Sponsor.  The Individual Defendants signed the Registration Statement and were responsible for its contents.  The Sponsor controlled USO as its commodity pool operator and fund manager.  USO and the Sponsor also controlled the Individual Defendants and all of their employees.

96.     The defendants named herein each were culpable participants in the violations of § 11 of the 1933 Act alleged in the Count above, based on their having signed the Registration

Statement, sold USO shares, and/or having otherwise participated in the process that allowed the offer and sale of USO shares to investors be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 10, 2020                    JOHNSON FISTEL, LLP

By: *s/ Frank J. Johnson*
FRANK J. JOHNSON (SBN 174882)

BRETT M. MIDDLETON (SBN 199427)
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
frankj@johnsonfistel.com
brettm@johnsonfistel.com

*Attorneys for Plaintiff*

26
CLASS ACTION COMPLAINT

<u>**CERTIFICATION OF PLAINTIFF PURSUANT**</u>
<u>**TO THE FEDERAL SECURITIES LAWS**</u>

I, Momo Wang, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 4/15/20 | 1300 | 4.44 |
| 4/16/20 | 800 | 4.25 |
| 4/18/20 | 1200 | 4.15 |
| 4/21/20 | 1000 | 2.85 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 5/13/2020 | 537 | 20.78 |
|  |  |  |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

DocuSign Envelope ID: E4696D41-030D-487C-A3BA-9DC781F21F51

6.    I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of July 2020.

DocuSigned by:

*Momo Wang*

E4EFFF9923444E6...

Momo Wang